UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSHUA J. CHEEK,

    Plaintiff,

v.

                                         Case No. 21-cv-201-pp

CHRISTINE HACKFORT,

    Defendant.

**ORDER CONSTRUING PLAINTIFF'S LETTER AS MOTION FOR EXTENSION OF TIME TO FILE OBJECTIONS AND GRANTING MOTION (DKT. NO. 6), OVERRULING PLAINTIFF'S OBJECTION (DKT. NO. 7), DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION (DKT. NO. 8), ADOPTING JUDGE JOSEPH'S REPORT AND RECOMMENDATION (DKT. NO. 5) AND DISMISSING CASE WITH PREJUDICE**

On February 17, 2021, the plaintiff, who is representing himself, filed a complaint against Christine Hackfort. Dkt. No. 1. On page 16 of the form complaint, the plaintiff marked the box next to the words, "I am suing for a violation of federal law under 28 U.S.C. §1331." Id. at 16. On March 16, 2021, Magistrate Judge Nancy Joseph issued a report recommending that this court dismiss the complaint for lack of subject matter jurisdiction. Dkt. No. 5. On March 24, 2021, the court received from the plaintiff a letter explaining that he was in the Milwaukee Secure Detention Facility, stating that he was "unable to respond" because he'd changed addresses and stating that he was sending a "separate lawsuit." Dkt. No. 6. Two weeks later, the court received another letter, asking "to appeal with the district court," asking for the court to "reconsider the complaint" and asking for guardian *ad litem*. Dkt. No. 7. On

1

April 19, 2021, the court received a third letter from the plaintiff, asking Judge Joseph to "reconsider opening the case." Dkt. No. 8.

The court will construe the plaintiff's March 24, 2021 letter as a motion for an extension of time to file objections to Judge Joseph's report and recommendation, grant the motion for an extension, overrule the plaintiff's objections, adopt Judge Joseph's report and recommendation in full and dismiss the case with prejudice. If the plaintiff intended his April 19, 2021 to be a motion to reconsider Judge Joseph's report and recommendation, the court will deny that motion as moot.

    A.    <u>Complaint</u>

The complaint alleges that on April 25, 2019, someone filed a petition for guardianship in Winnebago County Circuit Court. Dkt. No. 1 at 2. It says that the court appointed Christine Hackfort, who was required to submit a sworn statement to the court before the hearing stating that she would act in the plaintiff's best interests. <u>Id.</u> at 2-3. The complaint alleges, however, that Hackfort violated "constitutional and statutory rights in the community from 5-24-2019 until 11-01-2019, then after leaving jail in the community from 2-5-2020 until now 1-29-2021." <u>Id.</u> at 3. The plaintiff asserts that over those sixteen months, his constitutional rights were violated because he was in a non-licensed group home, "WIL, Inc."; he claims he was falsely confined by a supervisor at the group home and that his Fifth and Fourteenth Amendment rights were violated because he was deprived of the right to move about on his own. <u>Id.</u> at 4. While the allegations are hard to understand, the plaintiff appears to allege that Hackford deprived him of his right of freedom of movement by confining him without giving him the chance to dispute her decision or explain his views. <u>Id.</u> at 4-7. He says Hackfort did not speak the

truth when she said his lawsuits lacked merit. Id. at 7. He says she made irrational decisions by influencing him to go against himself. Id. at 8. He argues that his guardian wasn't appointed to fabricate facts or mislead the court. Id. at 9. He says he was a victim of crime in the group home. Id. at 11. The plaintiff says he is suing because he is being restrained by Hackfort interfering with his rights to sue. Id. at 12. He accuses Hackfort of obstructing justice and oppressing him. Id. at 13-15. The plaintiff seeks monetary damages. Id. at 16.

> B. Report and Recommendation

Judge Joseph discussed the plaintiff's prior litigation history as it related to the current lawsuit:

> This is [the plaintiff's] seventh lawsuit filed in the span of one year. In one of [the plaintiff's] previous lawsuits, Cheek v. Lundquist, 20-CV-182, Judge Griesbach determined that the Winnebago County Circuit Court had deemed [the plaintiff] legally incompetent and had appointed Oshkosh Family, Inc. as guardian over his person and estate, and had protectively placed him in a residential living facility. Judge Griesbach determined that under Fed. R. Civ. P. 17(c), an incompetent person lacks the capacity to represent himself and authorizes a general guardian to sue on the incompetent person's behalf. Judge Griesbach sought Christine Hackfort's (the guardianship representative from Oshkosh Family, Inc.) position on [the plaintiff's] lawsuits. Hackfort indicated that she believed [the plaintiff's] lawsuits were inappropriate and lacked merit. Given [the plaintiff's] incompetency and his guardian's unwillingness to pursue the lawsuits on [the plaintiff's] behalf, Judge Griesbach dismissed [the plaintiff's] cases.

Dkt. No. 5 at 2-3 (internal citations omitted).

Like Judge Griesbach, Judge Joseph determined that under "Rule 17(c), [the plaintiff] must pursue a lawsuit through his guardian, Oshkosh Family, Inc." Id. at 3. Judge Joseph also found that even if the plaintiff were competent to file a lawsuit on his own behalf, this federal court did not have jurisdiction over his claims. Id. Noting that the plaintiff had checked the box on the complaint indicating that he was suing under 28 U.S.C. §1331 (the federal

3

question jurisdictional statute), Judge Joseph found that the plaintiff had not identified the federal law or laws he claimed the defendant had violated. Id. at 4. Judge Joseph concluded that to the extent the plaintiff intended to sue under 42 U.S.C. §1983, he had not alleged sufficient facts to show that even if the defendant had violated his constitutional rights, she did so while acting under color of state law. Id. at 4-5. She explained that although the plaintiff "generally alleges that [the defendant] 'has done wrongful conduct as a state actor,' [the plaintiff] does not allege sufficient facts to support a plausible inference that [the defendant] is actually a state actor." Id. at 4.

Judge Joseph stated that "Oshkosh Family, Inc. appear[ed] to be a private entity that provides guardianship and other services." Id. (citation omitted). She stated that neither Oshkosh Family, Inc. nor the defendant as its employee, becomes "a state actor merely because it was appointed by a state court to serve as [the plaintiff's] guardian." Id. at 4-5 (citing Smith v. Wood, 649 F. Supp. 901, 906 (E.D. Pa. 1986)). Conceding that they serve in a "more limited capacity than guardians of the person or of the estate," Judge Joseph noted that "courts in this circuit have found that guardians *ad litem* are not state actors for purposes of §1983." Id. at 5 (citing Nelson v. Kujawa, No. 07-C-741, 2008 WL 2401260, at *2 (E.D. Wis. June 11, 2008)). She determined that the plaintiff had alleged no facts demonstrating that the defendant, a private party, had acted under color of state law. Id. at 5 (citing Wade v. Byles, 83 F.3d 902, 905 (7th Cir. 1996)).

Finally, Judge Joseph found that even if the plaintiff had stated a claim under some *state* law, he had not alleged sufficient facts for the court to exercise diversity jurisdiction (jurisdiction over lawsuits between parties from different states) under 28 U.S.C. §1332. Id.

C. <u>Objections</u>

On March 24, 2021, the court received from the plaintiff a letter explaining that he "was unable to respond due to [his] change of address." Dkt. No. 6. The court will construe this letter as a motion for an extension of time to file objections to Judge Joseph's report and recommendation and will grant the motion. In this letter, the plaintiff said that Hockfort and others used "wanton misconduct for failure to act when there was a duty to do so in a reckless disregard of another's rights." <u>Id.</u> at 2. He said that Hockfort lied about her knowledge of the claims in the lawsuits filed in the Green Bay division of this district. <u>Id.</u>

On April 5, 2021, the court received from the plaintiff a letter "ask[ing] to appeal with the district court." Dkt. No. 7. The clerk's office docketed this letter as the plaintiff's objection to the report and recommendation. In the letter, the plaintiff says that he is in an "unfair position" in this lawsuit because the defendant intentionally violated or deprived him of rights secured by the Constitution. <u>Id.</u> at 1. He asserts that the defendant's position as a "caregiver" means that she voluntarily assumed responsibility for his care, and she did not file a complete and accurate report of an incident of alleged misconduct, as required by "§DHS 13.05(3)(e)." <u>Id.</u> at 2-3. The plaintiff argues the defendant acted in "bad faith" in "denying the lawsuits, asserting that from February 5, 2021 to May 21, 2021 she knew about the client neglect at "WIL, Inc. that Corinna Lundquist and Riley in June of 2019 falsely imprisoned without due process." <u>Id.</u> at 3. The plaintiff asserts that he had his Fifth Amendment "deprived of as [his] freedom to not have any interference enjoying or exercising a right to do as one wishes within the limits of society or laws." <u>Id.</u> at 3-4.

The plaintiff claims that he was

> bribed by Hackfort stating she will give better mental health treatment if [he] drop[ped] all lawsuits and other ways to defraud [him] the plaintiff [] to suing Corinna Lundquist and other parties involved. Hackfort stated more than once to ignore the violations of constitutional rights Lundquist, Hackfort, [his] case manager Brandon Baumruk from Lakeland Care Inc. in Oshkosh, and WIL, Inc. former supervisor Riley.

Id. at 4-5.

The plaintiff asserts that "[a]ccording to Rule 17(c) gives [sic] a federal court to authorize [sic] someone other than a lawful representative to sue on an behalf [sic] of an incompetent person where the representative in this case No. 21-CV-201 Hockfort is unwilling to act because she too wasn't acting in good faith just standing in the middle as neglect and abuse took place for 13 months." Id. at 5-7. He concludes that "[i]f Hackfort isn't acting in a representative capacity the court should authorize someone other than the legal guardian Hackfort to Rule 17(c) to protecting [sic] a incompetent person . . . ." Id. at 7. Stating that he deserves justice so that the action may be treated fairly to require compliance with due process standards, he asks the court to reconsider the complaint, says he asks for "motion for counsel" and "for representation by a guardian ad litem." Id. at 8-9.

Two weeks later, the court received a letter addressed to "District Judge." Dkt. No. 8. It asked Magistrate Judge Joseph "to reconsider opening the case . . . under W.S.A. 54.42," arguing that a ward has a right to a jury trial and to present and cross-examine witnesses. Dkt. No. 8 at 1. He says that "[a]s this case under Rule 17(c)," his guardian denies to represent him in any lawsuits against WIL, Inc and HIL group home, despite the fact that the felony of false imprisonment was committed. Id. at 1-2. He asserts that this crime was committed by WIL, Inc. supervisor Riley, "who's under Corinna Lundquist." Id.

6

at 3. He insists that the court must give the parties the right to be heard and a guardian *ad litem* must represent him, since the defendant has been obstructing justice for two and a half years. Id. at 4. He asserts that Judge Griesbach dismissed all his Green Bay division cases because the defendant intentionally withheld information. Id. at 5. The ten-page document recounts the plaintiff's allegations that Hockfort declined to report neglect and abuse by people from "WIL, Inc." and asserts that the plaintiff needs counsel. The clerk docketed this letter as a motion for reconsideration.

D.     Legal Standard

Federal Rule of Civil Procedure 72(b)(1) allows a district court to refer a case to a magistrate judge, who then "conduct[s] the required proceedings," and "enter[s] a recommended disposition." The court may accept, reject or modify, in whole or in part, the magistrate judge's recommendation. 28 U.S.C. §636(b)(1). A dissatisfied party has fourteen days from the date the magistrate judge issues the recommendation to file "specific written objections." Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. §636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which an objection is made"). The dissatisfied party must specify "each issue for which review is sought," but need not specify "the factual or legal basis of the objection." Johnson v. Zema Sys. Corp., 170 F.3d 734, 741 (7th Cir. 1999). The district court must conduct a *de novo* review "only of those portions of the magistrate judge's disposition to which specific written objection is made." Id. at 739. "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." Id. (citations omitted). "The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left

7

with the definite and firm conviction that a mistake has been made." Wees v. Samsung Heavy Indus. Co. Ltd., 126 F.3d 925, 943 (7th Cir. 1997).

E. Analysis

In the documents the court received from the plaintiff after Judge Joseph issued her report and recommendation, the plaintiff reiterated and embellished upon the allegations in his complaint. He did not, however identify any portion of Judge Joseph's report and recommendation to which he objected. Although the letter the court received on April 5 indicated that the plaintiff wished to "appeal with the court," it did not explain how the plaintiff believed Judge Joseph had erred. In the letter received April 19, the plaintiff asked that Judge Joseph consider "reopening" the case, even though she had not closed it (only this court can do that). But again, the plaintiff did not identify any errors in Judge Joseph's recommendation. Because the plaintiff did not identify any specific rulings of Judge Joseph's to which he objected, the court will review the entire report and recommendation for clear error.

Judge Joseph's report is not clearly erroneous. The plaintiff has not disputed that a state court determined that he was incompetent and appointed the defendant as the guardian of his person and estate. (See, *e.g.*, Cheek v. Lundquist, Case No. 20-C-182, Dkt. No. 4 (E.D. Wis. January 28, 2021). Judge Joseph is correct that Fed. R. Civ. P. 17(c)(1)—which Judge Joseph, Judge Griesbach and this court must follow—says that a guardians may sue on behalf of an incompetent person. So—only the plaintiff's guardian may file a lawsuit in federal court.

Even if the plaintiff had not been declared incompetent by a state court and appointed a guardian, this court would not have subject-matter jurisdiction over his claims for reasons that Judge Joseph explained. Judge

8

Joseph explained that federal courts are courts of limited jurisdiction. They may hear claims of violations of *federal* laws or the *federal* Constitution (28 U.S.C. §1331) or claims raised in lawsuits between parties who live in different states (28 U.S.C. §1332). On the complaint form, the plaintiff marked the box that said he was suing for a violation of federal law under 28 U.S.C. §1331. Dkt. No. 1 at 16. But even though it is sixteen pages long, the complaint does not mention any federal laws. It mentions *state* laws of Wisconsin—Admin. Code §§ DHS 94.05(2)(b) and DHS 94.04(2)(c), id. at 7; Wis. Stats. §940.34, id. at 10. But this court does not have jurisdiction to decide *state law* violations unless those violations are being disputed by parties living in different states. This court has subject-matter jurisdiction to decide only violations of *federal* laws.

The court also has subject-matter jurisdiction to consider violations of the United States Constitution. The complaint does mention the Constitution several times, and the plaintiff mentions the Fifth and the Fourteenth Amendments, both of which protect (among other things) a person's right to due process. The mechanism for a person to raise a violation of his constitutional rights in federal court is 42 U.S.C. §1983, which says that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any state . . . subjects, or cause to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" shall be liable. "To prevail on a §1983 claim, the plaintiff must prove that '(1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law.'" First Midwest Bank Guardian of Est. of LaPorta v. City of Chi., 988 F.3d 978, 986

9

Case 2:21-cv-00201-PP   Filed 02/04/22   Page 9 of 12   Document 10

(7th Cir. 2021) (quoting Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). As Judge Joseph explained in her report and recommendation, a guardian *ad litem* is not a state actor subject to liability under §1983. Bach v. Milwaukee Cty. Circuit Court, 565 F. App'x 531 (7th Cir. 2014). Although the defendant is the guardian of the plaintiff's person and estate, as opposed to a guardian *ad litem*, the plaintiff has presented no evidence that she is a state actor. A state is responsible for private action under §1983 "only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 823 (7th Cir. 2009) (quoting Blum v. Yaretsky, 457 U.S. 991 (1982)). The plaintiff has presented no evidence showing that the defendant has acted under color of state law. While the plaintiff states the defendant "acted under color of state law," dkt. no. 1 at 5, conclusory recitations of the elements of a cause of action are insufficient to state a claim. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

The court also notes that, contrary to what the plaintiff appears to believe, the Constitution does not guarantee citizens a right to do whatever they wish or to go wherever they want. While the Fifth and Fourteenth Amendments say that no person may be deprived of his liberty without due process of law, the plaintiff seems to admit that there was a court case that resulted in the defendant being appointed his guardian. That is what court cases do—provide due process. Even if the defendant were a state actor, it is not clear that the plaintiff could state a claim against her for a due process violation.

Finally, while the court believes that the plaintiff likely meant the letter it received from the plaintiff on April 19, 2021 as another objection to Judge Joseph's report and recommendation, the clerk's office docketed it as a motion to reconsider. Dkt. No. 8. Judge Joseph did not make a final ruling dismissing the plaintiff's case. Instead, she recommended that this district court dismiss the case. There is nothing for Judge Joseph to reconsider—the plaintiff has objected to this court and this court has considered his objections. To the extent that the plaintiff meant for the letter received April 19, 2021 to be a motion for Judge Joseph to reconsider her report and recommendation, the court will deny it as moot.

The court will adopt Judge Joseph's report and recommendation in full.

F.  Conclusion

The court **CONSTRUES** the plaintiff's March 24, 2021 letter as a motion for an extension of time to file objections to Judge Joseph's report and recommendation and **GRANTS** the motion. Dkt. No. 6.

The court **OVERRULES** the plaintiff's objections to Judge Joseph's report and recommendation. Dkt. Nos. 7, 8.

To the extent that the plaintiff meant the letter received on April 19, 2021 to be a request for Judge Joseph to reconsider her report and recommendation, the court **DENIES** that request **AS MOOT**. Dkt. No. 8.

The court **ADOPTS** Judge Joseph's report and recommendation in full. Dkt. No. 5.

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE**. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by

11

filing in this court a notice of appeal within 30 days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 4th day of February, 2022.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**